PJG SSA R&R (Rev 5/19/2021)                                                                                                              Amy Henson Girard
_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Amy Henson Girard, | ) | C/A No. 0:20-cv-1905-DCC-PJG |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **ON PLAINTIFF'S APPEAL FROM THE** |
| v. | ) | **SOCIAL SECURITY** |
| | ) | **ADMINISTRATION'S DENIAL OF** |
| Andrew Saul, Commissioner of the Social Security Administration, | ) | **SOCIAL SECURITY BENEFITS** |
| | ) | ☐ Affirm |
| Defendant. | ) | ☒ Reverse and Remand |
| | ) | |

     This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying the plaintiff's claims for social security benefits.

**Part I—Plaintiff seeks:**

☒    Supplemental Security Income ("SSI"): Plaintiff's age at filing: <u>41</u>

☒    Disability Insurance Benefits ("DIB"): Date last insured: <u>December 31, 2020</u>

☐    Other:

Application date: <u>September 11, 2015</u>

Plaintiff's Year of Birth: <u>1974</u>

Plaintiff's alleged onset date: <u>April 1, 2015</u>

**Part II—Social Security Disability Generally**

     Under 42 U.S.C. § 423(d)(1)(A), (d)(5), and/or 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) and/or § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the Administrative Law Judge ("ALJ") to consider five issues in sequence, as outlined below. 20 C.F.R. § 404.1502(a)(4) and/or § 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

     A claimant has the initial burden of showing that he/she is unable to return to past relevant work because of his/her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A) and/or § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## Part III—Administrative Proceedings

Date of ALJ Decision:  <u>February 28, 2019</u>

In applying the requisite five-step sequential process, the ALJ found:

Step 1:        Plaintiff was engaged in substantial gainful activity during the relevant time period:
☐ Yes  ☒ No

Step 2:        ☒ Plaintiff has the following severe impairments:

<u>borderline personality disorder, depression, anxiety, posttraumatic stress disorder (PTSD), and schizoaffective disorder.</u>

☐ Plaintiff does not have a severe impairment.

Step 3:        ☒ Plaintiff's impairment(s) does/do not meet or medically equal a Listing.  20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:        Plaintiff's Residual Functional Capacity is as follows:

<u>Claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine and repetitive tasks.</u>

☐ Plaintiff could return to his/her past relevant work.

Step 5:        ☐ Plaintiff could not return to his/her past relevant work, but using the Medical-Vocational Guidelines ("Grids") as a framework supports a finding that Plaintiff is not disabled.  20 C.F.R. Pt. 404, Subpt. P, App'x 2.

☒ Plaintiff could not return to his/her past relevant work, but there are jobs in the national economy that Plaintiff can perform, as follows:

<u>a laundry worker (DOT # 361.685-018, medium, SVP of 2, with 70,000 jobs in the national economy); an industrial cleaner (DOT # 381.687-018, medium, SVP of 2, with 80,000 jobs in the national economy); and a machine cleaner (DOT # 699.687-014, medium, SVP of 2, with 30,000 jobs in the national economy).</u>

Date of Appeals Council decision:  <u>April 30, 2020</u>

## Part IV—Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996); <u>see also</u> 42 U.S.C. § 405(g); <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See <u>Brown v. Comm'r Soc. Sec. Admin.</u>, 873 F.3d 251, 267 (4th Cir. 2017); <u>Myers v. Califano</u>, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  <u>Craig</u>, 76 F.3d at 589; <u>see also</u> <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019); <u>Pearson v. Colvin</u>, 810 F.3d 204, 207 (4th Cir. 2015).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  <u>Biestek</u>, 139 S. Ct. at 1154 (citation omitted).  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence,

make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589; see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**Part V—Issues for Judicial Review**

Plaintiff's issue on appeal is that the ALJ's residual functional capacity analysis is not supported by substantial evidence. Plaintiff's brief raises the following sub-issues:

A. The ALJ failed to follow the Commissioner's "special technique" for evaluating mental impairments; and
B. The ALJ's RFC failed to incorporate the limitations she set out in her "paragraph B" analysis.
C. The ALJ's evaluation of Ms. Girard's subjective complaints is not supported by substantial evidence.

(See Pl.'s Br., ECF No. 22.)

**Oral Argument:**

☐ **Held on** _____.

☒ **Not necessary for recommendation.**

**Summary of Reasons**

Among other challenges, Plaintiff asserts that the ALJ's evaluation of her subjective complaints was not supported by substantial evidence. In particular, Plaintiff argues that the ALJ's assessment of Plaintiff's noncompliance with medication and treatment was problematic because (1) she failed to acknowledge that Plaintiff's condition fluctuated over time, and (2) she did not consider that Plaintiff's failure to comply with treatment was a symptom of her underlying impairments. Additionally, Plaintiff argues that the ALJ's analysis was undermined by her reliance on "a variety of basic daily activities in the face of years of evidence documenting [Plaintiff's] consistent difficulty to stay motivated." (Pl.'s Br. at 15, ECF No. 22 at 15.)

With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The first step

requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation omitted). During the second step, the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10. ALJs are further instructed to

> limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . . .

Id. at *11.

Further, "claims of disabling [symptoms] may not be rejected '*solely* because the available objective evidence does not substantiate [the claimant's] statements' as to the severity and persistence of her [symptoms]." Craig, 76 F.3d at 595 (citations omitted); see also Arakas v. Comm'r, 983 F.3d 83, 95-96 (4th Cir. 2020) (finding that the ALJ disregarded "longstanding precedent and the agency's own policy by improperly discounting Arakas's subjective complaints of pain and fatigue, based largely on the lack of objective evidence substantiating her statements").

"This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's [symptoms] and the extent to which it impairs [her] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

>  (i)    Your daily activities;
>  (ii)   The location, duration, frequency, and intensity of your pain or other symptoms;
>  (iii)  Precipitating and aggravating factors;
>  (iv)   The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>  (v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>  (vi)   Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>  (vii)  Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The record reflects that the ALJ largely followed the applicable rules and regulations in analyzing Plaintiff's allegations, which the ALJ summarized as follows:

> At the hearing, the claimant testified she has a driver's license and drives three times per week to the grocery store or drug store. She reported she lives with her mother and 12-year-old son. She maintained she is unable to work because she has experienced difficulty driving at times due to trembling of her hands from her PTSD. The claimant testified she cannot sit or stand for long periods of time. She reported she experiences insomnia and has difficulty concentrating. She stated she is currently receiving mental health treatment and she described her treatment and medications as helpful.

> The claimant testified she was last hospitalized secondary to her mental health symptoms in January 2017. She reported she generally wakes up to help her son get ready for school and then sleeps the majority of the day most days. She stated her medications make her lethargic. The claimant testified she wakes up when her son gets home from school and prepares simple meals and then returns to bed. The claimant testified she can shower independently but sometimes requires assistance getting dressed due to fatigue. She reported she goes to the grocery store sometimes 2 to 3 times a week and sometimes once every 3 weeks.
>
> The claimant testified she sometimes misses her son's school events because she is scared she will fall but that she attended his fall concert the night before her hearing. She reported she checks her email, talks on the telephone, and watches television. She stated she experiences panic attacks sporadically and that they generally last 5 to 10 minutes at a time. The claimant testified she has difficulty getting along with her mother and that her mood varies day to day.

(Tr. 21.) The ALJ then provided a chronological summary of Plaintiff's medical records and weighed the various global assessment of functioning (GAF) scores issued by treatment providers throughout the relevant time period.[1] (Tr. 21-25.) The ALJ found that Plaintiff's symptoms were not as limiting as alleged, based on the medical records and Plaintiff's own testimony. (Tr. 21, 25.)

Plaintiff correctly notes that the ALJ did not discuss whether Plaintiff's medication non-compliance was a result of her mental health impairments.[2] Yet, in determining that Plaintiff's mental impairments did not render her unable to work, the ALJ repeatedly weighed heavily the medical records suggesting that when Plaintiff was compliant with her medications, her symptoms were manageable. Conversely, the ALJ often gave less weight to the GAF scores assigned to

---

[1] " 'The psychiatric community has moved away from the use of the GAF scale . . . .' Nevertheless, the Social Security Administration issued a directive in 2013 that reaffirmed the use of GAF scores as medical evidence." Woodbury v. Colvin, 213 F. Supp. 3d 773, 781 (D.S.C. 2016). Courts are split on whether explicit consideration of GAF scores is required, but many in this district have found that such explicit consideration is not required. Id. at 781-83.

[2] The ALJ did note, at one point, that Plaintiff "attributed her noncompliance to financial constraints, [but] there is no evidence she requested a more affordable psychotropic medication until that time." (Tr. 24.)

Plaintiff when she had not been compliant with her treatment. Moreover, in evaluating Plaintiff's subjective complaints, the ALJ failed to consider Plaintiff's mental impairments as a reason for her non-compliance. See SSR 16-3p, 2017 WL 5180304, at *9 ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). This court and others have recognized that the failure to consider whether a claimant's medication non-compliance is the result of an underlying mental impairment is error. See Arrington v. Berryhill, C/A No. 0:17-2612-JMC-PJG, 2018 WL 725604, at *4 (D.S.C. Nov. 13, 2018) (recognizing that the failure to comply with treatment may not be a proper consideration in evaluating credibility if the failure to comply represents a symptom of a claimant's impairment), adopted by 2019 WL 101767; see also Jelinek v. Astrue, 662 F.3d 805, 814 (7th Cir. 2011) ("The ALJ apparently concluded that Jelinek's symptoms would have remained under control but for an unwillingness to take her medications as directed. But we have often observed that bipolar disorder, one of Jelinek's chief impairments, is by nature episodic and admits to regular fluctuations even under proper treatment. ALJs assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference."); Wake v. Comm'r of Soc. Sec., 461 F. App'x 608, 609 (9th Cir. 2011) (suggesting that "failure to comply with treatment may represent a symptom of her [bipolar disorder and depression]"). As explained by this court in Daniels v. Berryhill:

> Certainly, a claimant's knowing and willful failure to comply with medical treatment can be a basis to deny a disability application under the Social Security Act. However, a determination that a claimant has been non-compliant does not end the analysis. Where a claimant's mental illness is the primary cause of non-compliance, such failure to comply with medical treatment should be recognized as a symptom of the claimant's mental illness and not provide the basis for the denial of disability benefits. In Pate-Fires v. Astrue, 564 F.3d 935, 945-46 (8th Cir. 2009), a widely cited and respected Social Security case on non-compliance arising from

> mental illness, the Eighth Circuit noted that "noncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself, and, therefore, neither willful nor without a justifiable excuse . . . Courts considering whether a good reason supports a claimant's failure to comply with prescribed treatment have recognized psychological and emotional difficulties may deprive a claimant of the rationality to decide whether to continue treatment or medication." Thus, where an ALJ relies on a claimant's non-compliance with prescription medications to support a denial of a disability claim, the ALJ must include an explanation or discussion of the reasons, supported by the record, for his determination that noncompliance indicates willful conduct.

Daniels v. Berryhill, C/A No. 4:18-174-RMG, 2019 WL 2723694, at *5 (D.S.C. July 1, 2019). In the instant case, despite the thorough review of the medical records and medical opinions, the ALJ neither explained nor even acknowledged that Plaintiff's failure to comply with treatment could be a symptom of her mental impairments. Due to this omission, the court cannot find the ALJ's rejection of Plaintiff's subjective complaints to be supported by substantial evidence. Accordingly, the court recommends that this matter be remanded for further consideration of Plaintiff's mental impairments.

In light of the court's decision to remand for further consideration, the court need not address Plaintiff's remaining arguments, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Plaintiff may present her remaining arguments concerning the ALJ's alleged errors on remand.[3]

---

[3] The court observes that the ALJ's decision suggests that Plaintiff's condition also may have improved in the time leading up to hearing; therefore, if the ALJ finds that Plaintiff is not entitled to benefits during the entire period at issue, it may be appropriate for the ALJ to consider whether a closed period of disability is warranted.

PJG SSA R&R (Rev  5/19/2021)                                                                                                Amy Henson Girard

# RECOMMENDATION

**It is recommended that this matter be**

☐ **Affirmed. Plaintiff has failed to show that the Commissioner's decision was unsupported by substantial evidence or controlled by an error of law.**

☒ **Reversed and remanded pursuant to ☒ Sentence Four ☐ Sentence Six of 42 U.S.C. § 405(g) for further consideration consistent with this Order.**

☐ **Reversed and remanded for an award of benefits.**

May 25, 2021  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).